STERN & KILCULLEN, LLC
75 Livingston Avenue
Roseland, NJ 07068
(973) 535-1900
Herbert J. Stern (HS 3169)
Joel M. Silverstein (JS 5704)

*Attorneys for Plaintiff, Joel A. Schleicher*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------- x
                                   :

Joel A. Schleicher,                    :

                        :   Hon. William J. Martini

         Plaintiff,          :

                        :   Case No. 2:11−CV−02982−WJM−MF

         v.              :

                        :   **AMENDED COMPLAINT**

Presidio Holdings, Inc., a Delaware   :
Corporation, and Presidio, Inc., a Georgia   :
Corporation.                     :

                        :

         Defendants.        :

---------------------------------------------------------- x

       Plaintiff, Joel A. Schleicher, by and through his undersigned counsel, by way of Complaint

against Defendants Presidio, Inc. and Presidio Holdings, Inc. ("Presidio Holdings") hereby

alleges and says:

## <u>INTRODUCTION</u>

       1.     This is an action by the CEO of a corporation, Presidio, Inc. ("Presidio"), initially

brought to prevent unlawful interference by Presidio Holdings (Presidio's indirect parent) with

plaintiff's management of Presidio pursuant to the terms of his employment agreement, to which

both Presidio and Presidio Holdings are parties.  Plaintiff sought injunctive relief and specific

performance of that employment agreement to prevent Presidio Holdings and its Board of

Directors from further interfering with his management of Presidio.  In addition, because Presidio Holdings' statements and conduct following the recent merger in which Presidio Holdings became the indirect parent of Presidio demonstrate that Presidio Holdings never intended to honor plaintiff's rights and authority as Presidio's CEO under the terms of his employment agreement, plaintiff seeks by way of rescissory damages and restitution to recover $10.5 million he invested in equity of Presidio Holdings in reliance upon Presidio Holdings' confirmation and ratification of plaintiff's employment agreement.

2.      The conduct of Presidio Holdings' after the May 24, 2011 filing of this action and of plaintiffs' order to show cause and supporting papers seeking the aforementioned injunctive relief and specific enforcement of plaintiff's employment contract – including, without limitation, defendants exercise of their right, pursuant to the terms of plaintiff's  employment contract, to terminate him "without Cause" on June 6, 2011, effective June 16, 2011 – only further confirms that Presidio Holdings never intended to honor plaintiff's rights and authority as Presidio's CEO under the terms of his employment agreement.  Further, there is an actual controversy between plaintiff and defendants as to the compensation and benefits to which plaintiff is entitled under his employment agreement upon his termination "without Cause," and, defendants' recent conduct and communications indicate that defendants do not intend to fully perform or honor their obligations to provide plaintiff the compensation and benefits to which he is entitled under his employment agreement.

3.      Based on the allegations of the initial Verified Complaint, the recent termination without Cause, and other conduct and communications of defendants since the commencement of this action, this Amended Complaint reiterates and supplements the Third and Fourth Causes of Action in the Verified Complaint (Doc 1). It asserts claims against both defendants for: (1)

rescissory damages based on defendants' intentional and equitable fraudulent inducement of plaintiff's $10.5 million investment in Presidio Holdings through false representations and undertakings that defendants would honor the Employment Agreement, particularly as to plaintiff's role as CEO of Presidio and overall management responsibility for Presidio; (2) rescission based on defendants' intentional and equitable fraudulent inducement of plaintiff's Non-Competition, Non-Solicitation and No-Hire Agreement dated February 22, 2011 through those same misrepresentations and undertakings; (3) unjust enrichment; (4) declaratory relief as to the compensation and benefits to which plaintiff is entitled under his employment agreement upon his termination "without Cause" and (5) specific performance of the provisions of the employment agreement requiring defendants to provide plaintiff such compensation and benefits.

4.     Because defendants' termination of plaintiff without Cause as Presidio's CEO (among other positions) moots the First and Second causes of action in the initial Verified Complaint (Doc 1) – for injunctive relief and specific performance of the provisions of plaintiffs' employment agreement concerning his rights and authority as Presidio's CEO – those two counts are omitted from this Amended Complaint.

## PARTIES

5.     Plaintiff, Joel A. Schleicher, a citizen of the State of Florida, resides at 505 Orange Avenue, Unit 901, Sarasota Florida 34236.  Plaintiff is the CEO of Presidio.  Plaintiff is also the CEO and a minority shareholder of defendant Presidio Holdings.

6.     Presidio Holdings is a Delaware corporation, having its principal place of business at 299 Park Avenue, 34th Floor, New York, NY 10171.

7.     Presidio is a Georgia corporation, having its principal place of business at 7601 Ora Glen Dr., Suite 100, Greenbelt, MD 20770.

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because plaintiff and defendants are citizens of different States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.     Venue is proper in this District pursuant to the forum selection clause, Section 5(e), of the Employment Agreement discussed in paragraph 13 below.

## FACTUAL ALLEGATIONS

A.     **Background**

10.     Plaintiff is the founder, Chairman, and Chief Executive Officer of Presidio and its affiliates, including its former parent company, Integrated Solutions, LLC ("IS").

11.     Prior to the merger described below, Presidio, a Georgia corporation, was wholly owned by IS.

12.     Prior to that merger, most of the interests in IS were owned by various private equity funds/groups, with a minority interest owned by the employees of IS, including plaintiff.

B.     **Plaintiff's Employment Agreement**

13.     Before the merger described below, plaintiff served as CEO of IS and Presidio pursuant a Third Amended and Restated Employment Agreement, entered into as of September 1, 2010 (the "Employment Agreement") by and between plaintiff (referred to as "Executive" in the Employment Agreement) and IS and its subsidiaries, including Presidio and affiliates (referred to collectively as "IS" or the "Company" in the Employment Agreement).   A true copy of the Employment Agreement is attached hereto as Exhibit A.

14.     Section 1(b) of the Employment Agreement addresses plaintiff's duties as CEO of the Company, and provides as follows:

4

*Duties*. Executive shall serve as Chairman and Chief Executive Officer of the Company and shall perform such duties as generally required of persons in the positions of Chairman and Chief Executive Officer as well as such other reasonable duties required by the Board of Directors ("Board") of IS. Executive shall report directly to the Board (and shall be the sole officer reporting directly to the Board). Subject to the oversight of the Board and the provisions of the LLC Agreement (hereafter defined), Executive shall have overall management responsibility for the Company's operations and its acquisitions. In addition, Executive shall be appointed as a member of the Board in accordance with Section 6.1 of the Integrated Solutions, LLC Third Amended and Restated Limited Liability Company Agreement dated as of December 31, 2009, by and among the Company and the "Members" named therein, as amended from time to time (the "LLC Agreement").

15.     Section 5(f) of the Employment Agreement provides as follows:

*Equitable Remedies*.  The parties hereto agree that irreparable harm would occur in the event that any of the agreements and provisions this Agreement were not performed fully by the parties hereto in accordance with their specific terms or conditions or were otherwise breached, and that money damages are an inadequate remedy for breach of this Agreement because of the difficulty of ascertaining and quantifying the amount of damage that will be suffered by the parties hereto in the event that this Agreement is not performed in accordance with its terms or conditions or is otherwise breached. It is accordingly hereby agreed that the parties hereto shall be entitled to an injunction or injunctions to restrain, enjoin and prevent breaches of this Agreement by the other party hereto and to enforce specifically such terms and provisions of this Agreement, such remedy being in addition to and not in lieu of, any other rights and remedies to which the other party is entitled to at law or in equity.

## C.     The Merger

16.     In or about October 2010, IS entered into negotiations with representatives of American Securities, LLC, a Delaware limited liability company ("AS"), whereby affiliated entities controlled by AS would acquire IS and its subsidiaries, including Presidio.

17.     Prior to February 21, 2011, specifically for purposes of the merger, AS formed several "affiliated entities," including, without limitation: (i) AS Presidio Holdings LLC ("AS Presidio"); (ii) Presidio Holdings, which, prior to the merger, was owned 100% by AS Presidio; (iii) Presidio IS Corp. ("Presidio IS"), a Delaware corporation, which was and is owned 100% by

Presidio Holdings; and (iv) Presidio Merger Sub LLC, a Delaware limited liability company ("Merger Sub"), which is owned 100% by Presidio IS.

18.     On February 22, 2011, an Agreement and Plan of Merger (the "Merger Agreement") was executed by and among IS, Presidio Holdings, Merger Sub, and certain other parties.

19.     The Merger Agreement provided for the merger of Merger Sub with and into IS, with IS surviving as a wholly owned indirect subsidiary of Presidio Holdings (the "Merger").

20.     The Merger closed on March 31, 2011 (the "Closing").

21.     Prior to the Closing, the Boards of Directors of Presidio Holdings and Presidio IS each consisted of the same three individuals, each of whom was and is also a principal and/or employee of AS: Kevin Penn, Aaron Tolson, and Eric Schondorf.

22.     Prior to the Closing, Merger Sub – having no LLC or management agreement, no managers, and no employees – was controlled by its sole member, Presidio IS and its Board of Directors.

23.     Immediately upon the Closing, pursuant to a separate merger agreement between IS (into which Merger Sub had just merged) and Presidio: (i) IS merged with and into Presidio, with Presidio surviving as a wholly owned indirect subsidiary of Presidio Holdings; (ii) the articles of incorporation of Presidio in effect immediately prior to the downstream merger continued in full force and effect after such merger; and (iii) the bylaws of Presidio in effect immediately prior to the downstream merger became the effective bylaws after such merger.

24.     Following the Closing, apart from plaintiff, who was and is its Chairman, the Boards of Directors of Presidio Holdings and Presidio IS each consisted of three individuals, each of whom was and is also a principal and/or employee of AS: Kevin Penn, Aaron Tolson, and Paul Rossetti (who replaced Eric Schondorf).

25.     Following the Closing, the Board of Presidio consisted of plaintiff and Paul Fletcher, who prior to the Closing had been the CFO of IS.

26.     Presidio Holdings' indirect ownership of Presidio following the Closing is reflected in the following chart:



**D.     By Promising to Honor the Employment Agreement, Defendants Induced Plaintiff to Invest $10.5 Million in Presidio Holdings and to Agree to Substantially Longer Restrictive Covenants**

27.     Plaintiff, Presidio (through IS, one of its predecessors), and Presidio Holdings entered into a letter agreement dated February 21, 2011 (the "2/21/2011 Letter Agreement") which, except for certain amendments – none of which diminished plaintiff's (i) duties, authority, or responsibility as CEO under Section 1(b) of the Employment or (ii) rights or powers under Section 5(f) of the Employment Agreement – "ratified and confirmed" the provisions of the Employment Agreement.  A true copy of the 2/21/2011 Letter Agreement is attached hereto as Exhibit B.

28.     Defendants thereby promised and represented to plaintiff that they intended to honor the Employment Agreement, as amended by the 2/21/2011 Letter Agreement.

29.     Pursuant to the 2/21/2011 Letter Agreement, "Section 5(b) of the Employment Agreement [is] deemed to include [the 2/21/2011 Letter Agreement] and the Non-Competition and Non-Solicitation Agreement that the Executive is entering into in connection with the Merger Agreement."

30.     Apart from that amendment, Section 5(b) of the Employment Agreement, as confirmed and ratified by the 2/21/2011 Letter Agreement, provides in pertinent part as follows:

> This Agreement, the Vesting Agreement dated as of April 25, 2005, between Executive and the Company, as amended from time to time, the Noncompetition and Nonsolicitation Agreement dated as of November 2, 2004, between the Executive and the Company, as amended from time to time, *and the agreements between the Executive and the Company with respect to the equity or rights to equity held by Executive in the Company (pursuant to the LLC Agreement, the Company's incentive plans, or otherwise) constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof and supersedes in their entirety all other or prior agreements, whether oral or written, with respect thereto.*

*Id.* (emphasis added).

31.     On February 22, 2011, in reliance on Presidio Holdings' ratification and confirmation of the Employment Agreement, as amended by the 2/21/2011 Letter Agreement, plaintiff entered into a "Rollover Agreement" with Presidio Holdings, whereby plaintiff agreed to rollover, *i.e.*, invest, $10.5 million worth of his management equity in IS into similar equity in Presidio Holdings (the "Rollover Agreement").

32.     "[T]he agreements between the Executive and the Company with respect to the equity or rights to equity held by Executive in the Company (pursuant to the LLC Agreement, the Company's incentive plans, or otherwise)" referenced in Section 5(b) of the Employment Agreement, as amended, include the Rollover Agreement.

33.     On February 22, 2011, in reliance on Presidio Holdings' ratification and confirmation of the Employment Agreement, as amended by the 2/21/2011 Letter Agreement, plaintiff, who was already and continued to be subject to a 2004 Noncompetition and

Nonsolicitation Agreement between plaintiff and IS and its subsidiaries and affiliates (the "2004 Non-Compete") entered into an additional Non-Competition, Non-Solicitation and No-Hire Agreement (the "2011 Non-Compete").

34.     The 2011 Non-Compete effectively doubled the duration of the restrictive covenants to which plaintiff was subject: with few exceptions, the restrictive period under the 2011 Non-Compete was 36 months, as opposed to 18 months under the 2004 Non-Compete.

35.     The 2011 Non-Compete is the "Non-Competition and Non-Solicitation Agreement that the Executive is entering into in connection with the Merger Agreement" which, pursuant to 2/21/2011 Letter Agreement, is deemed included in Section 5(b) of the Employment Agreement (quoted in pertinent part in paragraph 30 above).

**E.     Presidio Holdings' Post-Closing Conduct Reveals That, Contrary to Their Pre-Closing Representations to Plaintiff, Defendants Never Intended to Honor the Employment Agreement**

36.     Presidio Holdings' post-Closing statements and conduct reflect that, although it ratified and confirmed the Employment Agreement, as amended, thereby promising and representing to plaintiff that it intended to honor that agreement, Presidio Holdings never intended to do so; rather, at all times, Presidio Holdings itself intended to exercise overall management responsibility and control over Presidio once the Merger was complete.

37.     That intention is reflected in an April 21, 2011 memo from Presidio Holdings' Board of Directors member Kevin Penn to plaintiff, stating in relevant part:

> Reflecting on yesterday's call, I wanted to give you some additional thoughts and recap some points.  I am hopeful that we can "get on the same page" quickly.  *We know you have been operating in your own way in the past, but it is important that you understand very clearly that American Securities will require Presidio to do some things differently.*  Our experience and success tells us that *what we will be requiring* is in the best interests of the Company and all its stakeholders.

(Emphasis added).

38.     Consistent with that April 21, 2011 memo, Presidio Holdings' post-Closing conduct has reflected and implemented its stated intention to control the management of Presidio and to disregard and override plaintiff's rights under Section 1(b) of the Employment Agreement.

39.     In an April 20, 2011 email from Penn to Paul Fletcher, the CFO and a director of Presidio, Presidio Holdings purported to override plaintiff's selection of the law firm of Hogan Lovells to provide legal services for Presidio, stating in pertinent part: "Regarding Hogan, as they are seller's counsel, they should not be doing any work for Presidio since closing."

40.     In a telephone conversation that same day (as Penn confirmed in a Memorandum to plaintiff the next day, April 21, 2011), Penn told plaintiff that:

> Weil [Gotshal] will be Corporate Counsel going forward. Any other counsel who will be paid more than $50,000 in any 12-month period must be approved by the board. Hogan [Lovells] can continue working on timely completion of Option Grants, and only on this. All other work performed by Hogan post-closing is assumed to be done for the benefit of the sellers. If the Company believes it needs to use Hogan for any purpose after May 1, 2011, this can be approved in advance by the board. This will all be incorporated in a board resolution.

41.     At a meeting of Presidio Holdings' Board of Directors on April 28, 2011, Penn proposed that the Board approve Weil Gotshal as legal counsel for Presidio and its affiliates. Plaintiff objected on the grounds that (a) it was the role of Presidio's management to select its corporate counsel, and (b) the Board of Directors of Presidio Holdings did not have the right to select corporate counsel for Presidio. Despite plaintiff's objections, Penn moved that the Board approve Weil Gotshal as counsel for Presidio and its affiliates, and the resolution passed, the AS members of Presidio Holdings Board – Penn, Tolson and Rossetti – all voting in favor, and plaintiff alone voting against it.

42.     By email sent on May 24, 2011, Tolson proposed for ratification at the next meeting of Presidio Holdings' Board revised minutes of the April 28, 2011 Board meeting which, according to his cover email, "added the full resolution regarding Weil as counsel."  As reflected in the attached revised minutes, that "full resolution" reads as follows:

> **WHEREAS,** Hogan Lovells US LLP ("Hogan") was the counsel for the sellers of the Company in the transaction pursuant to which American Securities purchased the Company;
>
> **WHEREAS**, the Board of the Company has determined that it is in the best interests of the Company to engage Weil, Gotshal & Manges, LLP for corporate matters;
>
> **WHEREAS**, selection of counsel to the Company shall be approved by the Board of the Company;
>
> **RESOLVED**, the Board of the Company has determined that Weil Gotshal & Manges, LLP shall be retained as Corporate Counsel for the Company;
>
> **RESOLVED FURTHER**, any other counsel who will be paid more than $50,000 in any 12-month period must be approved by the Board of the Company;
>
> **RESOLVED FURTHER**, Hogan's representation of the Company can continue solely for the timely completion of Option Grants (all other work performed by Hogan post-closing is assumed to be done for the benefit of the sellers);
>
> **RESOLVED FURTHER**, if any officer or representative of the Company desired to engage Hogan for any purpose after May 1, 2011, such retention shall be approved in advance by the Board of the Company....

43.     Presidio Holdings' post-Closing conduct prior to the filing of this action demonstrates that, contrary to its pre-closing representations to plaintiff, it never intended to honor the Employment Agreement, and particularly its provisions concerning plaintiffs' role as CEO of Presidio.

**F.      Defendants' Conduct Following the Filing of This Action Only Confirms That, Contrary to Their Pre-Closing Representations to Plaintiff, Defendants Never Intended to Honor the Employment Agreement Following the Closing**

44.     Plaintiff filed this action against Presidio Holdings on May 24, 2011.

11

45.     Plaintiff informed the Presidio Holdings Board of Directors that he had done so following a meeting of that Board the morning of May 26, 2011.

46.     Later that day, pursuant to the Court's May 26, 2011 Order to Show Cause, plaintiff served on Presidio Holdings that Order, the Summons, the Verified Complaint, and papers in support of his application for a preliminary injunction via Federal Express for delivery the next morning.

47.     As alleged in the Verified Complaint (Doc 1) and in the Brief in support of plaintiff's application for a preliminary injunction (Doc 1-5), following the Closing, plaintiff had pursuant to Section 1(b) of the Employment Agreement the right, duty, authority, and responsibility as CEO of Presidio to perform such duties as generally required of persons in the positions of Chief Executive Officer as well as such other reasonable duties required by the Board of Directors *of Presidio*, and to have overall management responsibility for Presidio's operations, subject only to the oversight of the Board of Directors *of Presidio* and the provisions of Presidio's bylaws.  Employment Agreement § 1(b).  *See* Verified Complaint (Doc 1) ¶¶ 10, 38; Brief (Doc 1-5) at 2, 8-9.

48.     As further alleged in the Verified Complaint and in the Brief in support of plaintiff's application for a preliminary injunction, following the Closing, "as Presidio's indirect parent, Presidio Holdings, including its Board of Directors, ha[d] no management responsibility for, or authority over, Presidio's operations."  *See* Verified Complaint (Doc 1) ¶¶ 39, 43; Brief (Doc 1-5) at 9 ("defendant - which, as Presidio's indirect parent, has no authority to manage Presidio's operations - has violated the plain terms of the Employment Agreement by interfering with plaintiff's efforts to manage Presidio...."), *id*. at 10 ("defendant will not suffer any harm if it is enjoined from interfering with plaintiffs management of Presidio because, as Presidio's

indirect parent, defendant has no management responsibility for, or authority over, Presidio's operations.").

49.     Following its May 27, 2011 receipt of the Verified Complaint (Doc 1), Order to Show Cause (Doc 3), and accompanying pleadings and papers, spelling out plaintiffs rights and authority under Section 1(b) of the Employment Agreement, and Presidio Holdings' prior and ongoing breaches of that section, Presidio Holdings made no effort to cure those breaches or to honor plaintiffs rights and authority as CEO of Presidio under Section 1(b) of the Employment Agreement.

50.     On the contrary, Presidio Holdings immediately moved to seize the management control over Presidio that the Verified Complaint had demonstrated Presidio Holdings  lacked as the indirect parent of Presidio, in order to ensure that Presidio Holdings (and, through it, AS), rather than plaintiff, would exercise overall management responsibility and control over Presidio.

51.     Specifically, on May 28, 2011, Presidio IS, acting as the Sole Stockholder of Presidio, by Written Consent of the Sole Stockholder of Presidio, Inc., "consent[ed]" to the adoption of certain resolutions in lieu of a meeting. A true and correct copy of that Written Consent of the Sole Stockholder of Presidio, Inc. (the "5/28/2011 Consent") is attached hereto as Exhibit C.

52.     The purposes of the resolutions adopted in the 5/28/2011 Consent were (1) to defeat plaintiff's right and authority under Employment Agreement Section 1(b) to perform such duties as generally required of persons in the position of Chief Executive Officer and to exercise overall management responsibility for Presidio's operations, subject only to the oversight of the Board of Directors *of Presidio* and the provisions of *Presidio's* bylaws; (2) to cure Presidio Holdings' (and AS's) lack of "management responsibility for, or authority over, Presidio's operations"; and (3) to thereby ensure implementation of Presidio Holdings' unwavering

13

intention that, once the Merger was complete, Presidio Holdings (and, through it, AS), rather than plaintiff, would exercise overall management responsibility and control over Presidio.

53.     Accordingly, the resolutions adopted in the 5/28/2011 Consent included, without limitation, resolutions (1) increasing the size of Presidio's Board from two to five directors and (2) electing as directors of Presidio, in addition to the two then current directors (plaintiff and Paul Fletcher), Kevin Penn, Paul Rossetti and Aaron Tolson.

54.     The net effect of those two resolutions was to make the same three AS employees or principals who had always comprised the majority of Presidio Holdings' Board post-Closing – Penn, Rossetti and Tolson – the majority of Presidio's Board as well.  Exhibit C, p. 2.

55.     That same day, May 28, 2011, Penn, Rossetti, and Tolson issued a "Notification of Joint Special Meeting of the Boards of Directors of Presidio, Inc. and Presidio Holdings Inc.," scheduling such a meeting on Wednesday, June 1, 2011 at 4 p.m. at the offices of AS in New York "to discuss certain confidential matters related to the Companies."

56.     Following several adjournments, that joint special meeting was held telephonically on the morning of Monday, June 6, 2011.

57.     During that telephonic meeting, with plaintiff and Paul Fletcher abstaining, Penn, Rosetti, and Tolson voted to terminate plaintiff without Cause, and elected AS employee Eric Schondorf as Vice President of Presidio.

58.     Later that morning, shortly after the telephonic joint board meeting, Schondorf sent plaintiff an email stating "[a]ttached is the notice of termination as passed by the board of directors of Presidio."

59.     The attached "Notice of Termination" consisted of a letter on the letterhead of Presidio, signed by Schondorf as "Vice President & Secretary," the body of which stated as follows:

> Reference is made to the Third Amended and Restated Employment Agreement by and between you, and Integrated Solutions LLC, a Delaware corporation (now known as Presidio, Inc.) and its subsidiaries and affiliates (collectively, the "Company"), dated as of September 1, 2010 (as amended by that certain letter agreement by and between you and the Company, dated as of February 21, 2011, the "Employment Agreement"). This letter is to provide you with notice in conformity with Section 5(c) of the Employment Agreement, of the termination of your employment pursuant to Section 3(a)(i) of the Employment Agreement. In accordance with Section 3 of the Employment Agreement, the Termination Date will be June 16, 2011 (ten (10) days following the date notice is given).

> Until such time, you will be deemed to be on leave and should not perform any duties or report to the office. During this period prior to the Termination Date, you are not authorized to take any actions on behalf of the Company or any of its affiliates. A representative of the Company will contact you concerning the return of all card keys, company credit cards and other company property. You shall continue to be bound by the non-compete, non-solicit, confidentiality obligations, non-disparagement and other similar obligations to which you are currently bound, including, without limitation, those contained in the Release, the Noncompetition and Nonsolicitation Agreement between the Company and the Executive, dated as of November 2, 2004, and the Non- Competition, Non-Solicitation and No-Hire Agreement, by and among Presidio Holdings Inc., Presidio Inc., and the Executive, dated as of February 22, 2011, which are each incorporated herein by reference and remain in full force and effect in accordance with their terms.

A true and correct copy of the Notice of Termination is attached hereto as Exhibit D.

60.     Defendants' conduct following the filing of this action only confirms that, contrary to their pre-closing representations to plaintiff, defendants never intended to honor the Employment Agreement following the Closing.

**G.     Plaintiffs Do Not Intend to Fully Honor Plaintiff's Contractual Rights Upon His Termination Without Cause**

61.     Section 3(a)(i) of the Employment Agreement, pursuant to which Presidio, Inc. terminated plaintiff, provides as follows:

> *Termination Without Cause*.  In the event Executive's employment with the Company is terminated by the Company without Cause (as defined in Section 3(b)

below), Executive shall be entitled to receive (i) any Base Salary, unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date, (ii) Executive's then existing Base Salary for a period of three (3) years following termination of employment to be paid annually in advance with payment of the first installment made within 10 days following termination of employment and future payments on each anniversary of termination (iii) the continuation of company paid medical, dental and disability benefits provided under the Plans for a period of five (5) years in the form of Company paid premiums allocable to such coverage on a monthly basis, with additional monthly cash payments to Executive to the extent the coverage is taxable to Executive in an amount sufficient to cover any taxes on the premiums and such additional cash payments, provided, however, that in the event that under the terms of the Plans the Executive cannot continue to participate during such five-year term, the Company will coordinate in good faith with the Executive to provide through COBRA or replacement coverage at the companies cost and (iv) a bonus in an amount equal to three (3) times the prior year's bonus, provided however, that such bonus shall be paid annually in advance, for each of the three (3) years following the termination of employment.

62.     Between the filing of this action and defendants' termination of plaintiff without Cause, plaintiff and defendants discussed, and disagreed about, the compensation and benefits to which plaintiff would be entitled under the Employment Agreement in the event that defendants terminated him without Cause.

63.     Based on those discussions, once defendants terminated plaintiff's employment, plaintiff doubted that defendants would fully honor plaintiff's rights under the Employment Agreement upon his termination without Cause.

64.     Accordingly, on June 6, the day he was terminated, plaintiff, through counsel, wrote defendants seeking defendants' written acknowledgement, among other things, that the compensations and benefits plaintiff is entitled to receive under the Employment Agreement include the following:

- Accrued Bonus for the Fiscal Year ending June 30, 2011 based on objectives met prior to termination (Employment Agreement § 2(b))

- Base Salary through the June 16, 2011 Termination Date (*id.* § 3(a)(i))

- Unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date, including unused vacation days in accordance with Company policy (*id.*)

16

- Existing Base Salary for a period of three (3) years following termination of employment, to be paid annually in advance with payment of the first installment made within 10 days following termination of employment and future payments on each anniversary of the termination (*id.*)

- Bonus in an amount equal to three (3) times plaintiff's prior year's bonus (which was $862,394 for a termination in this fiscal year), provided, however, that such bonus shall be paid annually in advance (therefore the first amount is due June 16, 2011), for each of the three (3) years following the termination of employment (*id.*)

- Continuation of Company paid medical, dental and disability benefits provided under the Plans for a period of five (5) years in the form of Company paid premiums allocable to such coverage on a monthly basis, with additional monthly cash payments to plaintiff to the extent the coverage is taxable to plaintiff in an amount sufficient to cover any taxes on the premiums and such additional cash payments, provided, however, that in the event that under the terms of the Plans plaintiff cannot continue to participate during such five-year term, the Company will coordinate in good faith with plaintiff to provide through COBRA or replacement coverage at the Company's cost (*id.*)

- Full reimbursement on a current and timely basis for the reasonable legal fees and other expenses incurred by plaintiff in connection with any litigation or dispute related to the Employment Agreement, including, without limitation, bill dated last week for services rendered in May of 2011 (*id.* § 5(h)).

65. Defendants responded to that June 6 letter by letter from Eric Schondorf on letterhead of both Presidio and AS, dated June 8, 2011.

66. Far from addressing plaintiff's entitlement to any of the specific items of compensation or benefits under the Employment Agreement detailed in plaintiff's June 6 letter – much less the critical dollar amounts, durations, and other terms specified in plaintiff's June 6 letter – defendants' June 8 letter conspicuously avoided these issues, stating in pertinent part only that "Presidio, Inc. intends to honor its contractual obligations to Mr. Schleicher in accordance with the terms of his employment agreement."

67. Based on (1) that response, (2) the disagreements in pre-termination discussions between plaintiff and defendants concerning what "contractual obligations" defendants have to plaintiff under the Employment Agreement upon plaintiff's termination without Cause, and (3)

17

defendants' lack of candor and systematic, ongoing flouting of plaintiff's rights under the Employment Agreement to date, plaintiff believes that defendants do not intend to fully perform or honor their obligations to provide plaintiff the compensation and benefits to which he is entitled under the Employment Agreement.

**H.      Plaintiff Has No Adequate Remedy at Law**

68.     Plaintiff has performed all of his obligations under the Employment Agreement, and all conditions to his rights thereunder have occurred or been satisfied.

69.     Plaintiff has, however, no adequate remedy at law for defendants' ongoing breaches of the Employment Agreement and improper interference with plaintiff's exercise of his authority as CEO of Presidio and fulfillment of his overall management responsibility for Presidio's operations.

70.     As plaintiff and defendants expressly recognized and agreed in confirming and ratifying the Employment Agreement on February 21, 2011:

> irreparable harm would occur in the event that any of the agreements and provisions this Agreement were not performed fully by the parties hereto in accordance with their specific terms or conditions or were otherwise breached, and . . . money damages are an inadequate remedy for breach of this Agreement because of the difficulty of ascertaining and quantifying the amount of damage that will be suffered by the parties hereto in the event that this Agreement is not performed in accordance with its terms or conditions or is otherwise breached.

Employment Agreement § 5(f).

71.     Accordingly, plaintiff and defendants further agreed that "the parties hereto shall be entitled to an injunction or injunctions to restrain, enjoin and prevent breaches of this Agreement by the other party hereto and to enforce specifically such terms and provisions of this Agreement, such remedy being in addition to and not in lieu of, any other rights and remedies to which the other party is entitled to at law or in equity." *Id*.

## FIRST CAUSE OF ACTION

(Against Both Defendants for Rescissory Damages Based
Upon Fraud in the Inducement of the Rollover Agreement)

72.    Plaintiff incorporates the previous allegations as if set forth at length herein.

73.    To induce plaintiff to execute the Rollover Agreement, defendants entered into the 2/21/2011 Letter Agreement, thereby ratifying and confirming the Employment Agreement (as amended by the 2/21/2011 Letter Agreement).

74.    Defendants thereby promised and represented to plaintiff that they intended to honor that agreement, and, in particular, its provisions requiring defendants to honor plaintiff's role as CEO of Presidio and plaintiff's overall management responsibility for Presidio.

75.    At the time these representations were made to plaintiff, defendants knew they were false: in truth, as demonstrated by their post-Closing statements and conduct, defendants never intended to honor the Employment Agreement's provisions regarding plaintiff's role as Chairman and CEO of Presidio and plaintiff's overall management responsibility for Presidio.

76.    Defendants made these misrepresentations intentionally, to obtain an undue advantage over plaintiff and induce him, among other things, to execute the Rollover Agreement.

77.    In making these intentional misrepresentations, defendants acted with actual malice and in wanton and willful disregard of plaintiff's rights and interests.

78.    Plaintiff was unaware of the falsity of these representations when defendants made them, and remained unaware of their falsity until after the Closing.

79.    Plaintiff justifiably relied upon defendants' misrepresentations of material fact by, among other things, executing the Rollover Agreement and, pursuant to its terms, rolling over $10.5 million worth of his management equity in IS into similar equity in Presidio Holdings.

80.     Had plaintiff known the truth – that defendants never intended to honor the Employment Agreement's provisions regarding plaintiff's role as CEO of Presidio and plaintiff's overall management responsibility for Presidio – he would not have executed the Rollover Agreement, or rolled over $10.5 million worth of his management equity in IS into similar equity in Presidio Holdings.

81.     Further, had plaintiff not executed the Rollover Agreement, plaintiff would have received from Merger Sub upon the merger an additional $10.5 million in exchange for his management equity in IS that is the subject of the Rollover Agreement – proceeds that instead remained in Merger Sub and ultimately went to Presidio as the surviving entity of its merger with Merger Sub.

82.     As a result, plaintiff is entitled to rescission of the Rollover Agreement based on fraud in the inducement.

83.     Rescission is not practicable, however, because restoring each party to its original position would require not only plaintiff's return to Presidio Holdings of the equity interest in Presidio Holdings plaintiff received pursuant to the Rollover Agreement, but also Presidio Holdings' return to plaintiff of the $10.5 million which he invested pursuant to the Rollover Agreement, but which cannot be returned to plaintiff because it consisted of plaintiff's management equity in IS, and both IS and plaintiff's equity interest in it ceased to exist as a result of Merger.

84.     As plaintiff is entitled to rescission, but rescission is not practicable, plaintiff is entitled to at least $10.5 million in rescissory damages, that is, damages that would put plaintiff in the same economic position as would rescission were it practicable.

## SECOND CAUSE OF ACTION

(Against Both Defendants for Rescissory Damages Based Upon
Equitable Fraud in the Inducement of the Rollover Agreement)

85.    Plaintiff incorporates the previous allegations as if set forth at length herein.

86.    The foregoing allegations demonstrate that, regardless of whether defendants acted with scienter or caused plaintiff any injury or damage, defendants are liable to plaintiff for equitable fraud in the inducement of the Rollover Agreement.

87.    As a result, plaintiff is entitled to rescission of the Rollover Agreement without having to prove scienter, injury, causation, or damages.

88.    Rescission is not practicable, however, because restoring each party to its original position would require not only plaintiff's return to Presidio Holdings of the equity interest in Presidio Holdings plaintiff received pursuant to the Rollover Agreement, but also Presidio Holdings' return to plaintiff of the $10.5 million which he invested pursuant to the Rollover Agreement, but which cannot be returned to plaintiff because it consisted of plaintiff's management equity in IS, and both IS and plaintiff's equity interest in it ceased to exist as a result of Merger.

89.    As plaintiff is entitled to rescission, but rescission is not practicable, plaintiff is entitled to at least $10.5 million in rescissory damages, that is, damages that would put plaintiff in the same economic position as would rescission were it practicable.

## THIRD CAUSE OF ACTION

(Against Both Defendants for Rescission of the 2011 Non-
Compete Agreement Based On Fraud in the Inducement)

90.    Plaintiff incorporates the previous allegations as if set forth at length herein.

91.     Defendants entered into the 2/21/2011 Letter Agreement, thereby ratifying and confirming the Employment Agreement (as amended by the 2/21/2011 Letter Agreement), for the further purpose of inducing plaintiff to execute the 2011 Non-Compete.

92.     Defendants thereby promised and represented to plaintiff that they intended to honor that agreement, and, in particular, its provisions requiring defendants to honor plaintiff's role as CEO of Presidio and plaintiff's overall management responsibility for Presidio.

93.     At the time these representations were made to plaintiff, defendants knew they were false: in truth, as demonstrated by their post-Closing statements and conduct, defendants never intended to honor the Employment Agreement's provisions regarding plaintiff's role as Chairman and CEO of Presidio and plaintiff's overall management responsibility for Presidio.

94.     Defendants intentionally made these misrepresentations to obtain an undue advantage over plaintiff and induce him, among other things, to execute the 2011 Non-Compete.

95.     Plaintiff was unaware of the falsity of these representations when defendants made them, and remained unaware of their falsity until after the Closing.

96.     Plaintiff justifiably relied upon defendants' misrepresentations of material fact by, among other things, executing the 2011 Non-Compete and, pursuant to its terms, rolling over $10.5 million worth of his management equity in IS into similar equity in Presidio Holdings.

97.     Had plaintiff known the truth – that defendants never intended to honor the Employment Agreement's provisions regarding plaintiff's role as CEO of Presidio and plaintiff's overall management responsibility for Presidio – he would not have executed the 2011 Non-Compete.

98.     As a result, plaintiff is entitled to rescission of the 2011 Non-Compete based on fraud in the inducement.

## FOURTH CAUSE OF ACTION

(Against Both Defendants for Rescission of the 2011 Non-Compete
Agreement Based Upon Equitable Fraud in the Inducement)

99.     Plaintiff incorporates the previous allegations as if set forth at length herein.

100.    The foregoing allegations demonstrate that, regardless of whether defendants acted with scienter or caused plaintiff any injury or damage, defendants are liable to plaintiff for equitable fraud in the inducement of the 2011 Non-Compete.

101.    As a result, plaintiff is entitled to rescission of the 2011 Non-Compete without having to prove scienter, injury, causation, or damages.

## FIFTH CAUSE OF ACTION

(Against Both Defendants for Unjust Enrichment)

102.    Plaintiff incorporates the previous allegations as if set forth at length herein.

103.    As detailed above, in reliance on defendants' material misrepresentations to plaintiff that they intended to honor the Employment Agreement's provisions regarding plaintiff's role as Chairman and CEO of Presidio and plaintiff's overall management responsibility for Presidio, plaintiff executed the Rollover Agreement and, pursuant to its terms, rolled over $10.5 million worth of his management equity in IS into similar equity in Presidio Holdings, thereby

104.    Had plaintiff not executed the Rollover Agreement, plaintiff would have received from Merger Sub upon the merger an additional $10.5 million in exchange for his management equity in IS that is the subject of the Rollover Agreement – proceeds that instead remained in Merger Sub and ultimately went to Presidio as the surviving entity of its merger with Merger Sub.

105.    Defendants have unjustly retained that wrongfully obtained $10.5 million profit at the expense of plaintiff.

106.    Defendants have been unjustly enriched at the expense of plaintiff by their receipt and retention of the $10.5 million investment that their material misrepresentations induced plaintiff to roll over into equity in Presidio Holdings.

## SIXTH CAUSE OF ACTION

(Against Both Defendants for Declaratory
Judgment Pursuant to 28 U.S.C. § 2201)

107.    Plaintiff incorporates the previous allegations as if set forth at length herein.

108.    There is an actual controversy between plaintiff and defendants as to the compensation and benefits to which plaintiff is entitled pursuant to Sections 2(b), 3(a)(i) and 5(h) of the Employment Agreement upon his termination without Cause, including, without limitation, whether plaintiff is entitled to the particular items of compensation and benefits listed in paragraph 64 above.

109.    A declaration by this Court of the parties' rights and obligations will serve to settle this controversy between them.

## SEVENTH CAUSE OF ACTION

(Against Both Defendants for Specific Enforcement of
Sections 2(b), 3(a)(i) and 5(h) of the Employment Agreement)

110.    Plaintiff incorporates the previous allegations as if set forth at length herein.

111.    Under the circumstances alleged, plaintiff is entitled to an order specifically enforcing Sections 2(b), 3(a)(i) and 5(h) of the Employment Agreement, including, without limitation, by directing defendants to (a) fully comply with the terms of those sections and (b) in accordance with their terms, to provide plaintiff to each and all of the particular items of compensation and benefits listed in paragraph 64 above.

**WHEREFORE**, plaintiff demands judgment for the following:

A.      An award of $10.5 million in rescissory damages;

B.      Rescission of the 2011 Non-Compete;

C.      Restitution of the $10.5 million by which defendants have been unjustly enriched;

D.      Declaratory relief as to the compensation and benefits to which plaintiff is entitled under Sections 2(b), 3(a)(i) and 5(h) of the Employment Agreement;

E.      Specific enforcement of Sections 2(b), 3(a)(i) and 5(h) of the Employment Agreement, including, without limitation, an order directing defendants to (a) fully comply with the terms of those sections and (b) in accordance with their terms, to provide plaintiff to each and all of the particular items of compensation and benefits listed in paragraph 64 above.

F.      Punitive damages;

G.      An award to plaintiff of interest and his costs of this action, including, without limitation, his reasonable legal fees and other expenses in connection with this action pursuant to Section 5(h) of the Employment Agreement; and

H.      Such other and further relief as the Court may deem just and proper.


Dated:  Roseland, New Jersey
        June 9, 2011


                                      STERN & KILCULLEN, LLC

                                      s/Joel M. Silverstein
                                      Herbert J. Stern (HS 3169)
                                      Joel M. Silverstein (JS 5704)
                                      75 Livingston Avenue
                                      Roseland, New Jersey 07068
                                      (973) 535-1900

                                      *Attorneys for Plaintiff, Joel A. Schleicher*

25

EXHIBIT A

September 15, 2010

## THIRD AMENDED AND RESTATED EMPLOYMENT AGREEMENT

This Third Amended and Restated Employment Agreement (hereinafter referred to as the "Agreement") is entered into by and between Joel A. Schleicher, an individual (hereinafter referred to as "Executive"), and Integrated Solutions LLC, a Delaware corporation, and its subsidiaries including Presidio, inc. and affiliates, including any principal operating subsidiary of Presidio, Inc. (hereinafter referred to collectively as "IS" or the "Company") as of September 1, 2010.

## BACKGROUND

Executive is a current employee of IS pursuant to the provisions of that certain Amended and Restated Employment Agreement dated as of December 10, 2006 as further amended and restated as of November 2007 by and between IS and Executive (as amended, the "Existing Employment Agreement").   It is the express intention of IS and Executive that this Agreement amend and restate in its entirety the Existing Employment Agreement.

## AGREEMENT

1.      Employment by IS and Duration.

(a)      *Full Time and Best Efforts*.   Subject to the terms set forth herein, IS hereby employs Executive to provide management services for IS as Chairman and Chief Executive Officer for IS, and Executive hereby accepts such employment.   During the Executive's employment with the Company, Executive will devote his best efforts and substantially all of his business time and attention to the performance of his duties hereunder, except for vacation periods as set forth herein and reasonable absences due to injury or illness if permitted by the employment policies and practices of IS applicable generally to executive-level employees of IS as in effect from time to time (collectively, the "General Policies") or participating in normal civic, charitable or religious activities or serving on the outside Boards of Directors set forth on **Schedule 1(a)** or such other outside Boards

of Directors that may replace from time to time any of the outside Boards of Directors set forth on **Schedule 1(a)**.

(b)  *Duties*.  Executive shall serve as Chairman and Chief Executive Officer of the Company and shall perform such duties as generally required of persons in the positions of Chairman and Chief Executive Officer as well as such other reasonable duties required by the Board of Directors ("Board") of IS.  Executive shall report directly to the Board (and shall be the sole officer reporting directly to the Board).  Subject to the oversight of the Board and the provisions of the LLC Agreement (hereafter defined), Executive shall have overall management responsibility for the Company's operations and its acquisitions.  In addition, Executive shall be appointed as a member of the Board in accordance with Section 6.1 of the Integrated Solutions, LLC Third Amended and Restated Limited Liability Company Agreement dated as of December 31, 2009, by and among the Company and the "Members" named therein, as amended from time to time (the "LLC Agreement").

(c)  *Term of Employment*.  The term of Executive's employment hereunder shall commence on September 1, 2010 (the "Effective Date"), and shall continue for three (3) years from the Effective Date, and such period shall be automatically extended for successive thirty six month periods upon each monthly anniversary of the Effective Date, thus retaining an on-going thirty six month term for this Agreement (as so extended from time to time, the "Term"), unless Executive's employment is terminated in accordance with the provisions of this Agreement.  The Executive and the Company understand that the Executive may resign, or the Company may terminate the Term and Executive's employment with the Company, at will at any time for any reason, subject to Section 3 below.

(d)  *Locations of Performance*.  Executive shall carry out his responsibilities as Chairman and Chief Executive Officer in the vicinity of either (a) Watchung, New Jersey, (b) Sarasota, Florida, or (c) Orlando, Florida (each is referred to as a "Permanent Location").  Executive's responsibility will require frequent travel in accordance with the legitimate business needs of IS.

2.      <u>Compensation Benefits</u>.

(a)      <u>*Salary*</u>.   Commencing on September 1, 2010, Executive shall receive annual base compensation ("<u>Base Salary</u>") of $745,000.00, which Base Salary shall be adjusted upwards on each anniversary of such date in a percentage equal to the percentage increase in the Consumer Price Index for Metropolitan New York City area for the prior calendar year as published in the Wall Street Journal.   All other increases in Base Salary shall be made in the sole discretion of the Board. All payments of Base Salary shall be made at the times required by the General Policies.

(b)      <u>*Bonus*</u>.   Executive shall be eligible to receive an annual bonus at the end of each fiscal year equal to at least 100% of the Employee's then existing base salary ("<u>Target Bonus</u>") if the Company meets objectives determined by the Compensation Committee of the Board in its discretion (after consultation with the Executive).   Executive's annual bonus shall be paid by the Company on the later of (i) ninety (90) days after the end of the fiscal year or (ii) such time that the Company has delivered to the Investor Members (as defined in the LLC Agreement) the audited financial statements for such fiscal year; provided that such bonus shall be paid no later than October 15 of the calendar year in which such fiscal year ends.   Such objectives shall be determined by the Compensation Committee of the Board (after consultation with the Executive) on the earlier of (i) July 31 of such fiscal year or (ii) the date on which the Company's budget for such fiscal year is approved by the Board.

(c)      <u>*Fringe Benefits; Participation in Benefit Plans; Vacation*</u>.   During the Executive's employment with the Company, and otherwise in accordance with Section 3 of this Agreement, Executive shall be entitled to the benefits of such group medical, disability and term life insurance and participate in such benefit plans and programs made available by the Company to executive-level employees generally (collectively, the "<u>Plans</u>").   Executive shall be entitled to eight (8) weeks paid vacation each calendar year during Executive's employment.

(d)      <u>*Withholding*</u>.   The Company may withhold from the Executive's compensation all applicable amounts required by law.

3

(e)     _Relocation_.   IS shall reimburse all reasonable out-of-pocket expenses incurred by Executive in connection with any relocation (including airfare, moving and temporary living expenses and mortgage expenses not to exceed three points) in accordance with the General Policies in the event the Company requires Executive to relocate his permanent residence from one Permanent Location to any other Permanent Location.

(f)     _Reasonable Business Expenses_.   Executive shall be reimbursed for documented and reasonable business expenses in connection with the performance of his duties hereunder in accordance with the Company's General Policies.

3.     Termination of Employment.   The date on which Executive's employment hereunder terminates, under any of the following circumstances, shall be defined herein as the "Termination Date."   Unless otherwise provided below, the Termination Date shall be ten (10) days following the date upon which notice of termination is given (or in the case of a termination by reason of Executive's death, the date of Executive's death).

(a)     _Termination Without Cause; Termination upon a Fundamental Change_.

(i)     _Termination Without Cause_.   In the event Executive's employment with the Company is terminated by the Company without Cause (as defined in Section 3(b) below), Executive shall be entitled to receive (i) any Base Salary, unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date, (ii) Executive's then existing Base Salary for a period of three (3) years following termination of employment to be paid annually in advance with payment of the first installment made within 10 days following termination of employment and future payments on each anniversary of termination (iii) the continuation of company paid medical, dental and disability benefits provided under the Plans for a period of five (5) years in the form of Company paid premiums allocable to such coverage on a monthly basis, with additional monthly cash payments to Executive to the extent the coverage is taxable to Executive in an amount sufficient to cover any taxes on the premiums and such additional cash payments, provided, however, that in the event that under the terms of the Plans the Executive cannot continue to participate during such five-year term, the Company will coordinate in good faith with the

4

Executive to provide through COBRA or replacement coverage at the companies cost and (iv) a bonus in an amount equal to three (3) times the prior year's bonus, provided however, that such bonus shall be paid annually in advance, for each of the three (3) years following the termination of employment.

(ii)      *Termination upon Fundamental Changes.*   In the event that Executive voluntarily terminates his employment with the Company within sixty (60) days following the occurrence of a Fundamental Change (as defined below), Executive shall be entitled to receive (i) any Base Salary, unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date, (ii) Executive's then existing Base Salary for a period of three (3) years following termination of employment to be paid annually in advance with payment of the first installment made within 10 days following termination of employment and future payments on each anniversary of termination , (iii) the continuation of Company paid medical, dental and disability benefits provided under the Plans for a period of five (5) years in the form of Company paid premiums allocable to such coverage on a monthly basis, with additional monthly cash payments to Executive to the extent the coverage is taxable to Executive in an amount sufficient to cover any taxes on the premiums and such additional cash payments, provided, however, that in the event that under the terms of the Plans the Executive cannot continue to participate during such five-year term, the Company will coordinate in good faith with the Executive to provide through COBRA or replacement coverage at the companies cost and (iv) a bonus in an amount equal to three (3) times the Target Bonus; provided however, that such bonus shall be paid annually in advance for each of the three (3) years following the termination of employment.   Executive shall provide IS ten (10) days' written notice prior to any such termination, and IS shall have a reasonable period of time not to exceed thirty (30) days to cure such Fundamental Change.   "Fundamental Change" shall be defined as (a) any material diminution in the Executive's duties, authority and/or responsibility without his prior written consent; (b) if the Company requires Executive to move to or be based at any office or location of the Company (except for required travel consistent with Executive's performance of duties and obligations under this Agreement) that is greater than 50 miles from any

5

Permanent Location, provided that IS will not require Executive to move or be based at any office or location of the Company more than once, even in the event of a relocation of less than 50 miles from any Permanent Location; or (c) any material breach by IS of any material obligation under this Agreement.

(b)     *Termination for Cause*.   In the event that Executive's employment with the Company is terminated by the Company for Cause, Executive shall be entitled to receive any Base Salary, unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date.   For purposes of this Agreement, "Cause" means the occurrence or existence of any of the following with respect to Executive, as determined in good faith by the Board: (a) any act of material dishonesty or material misappropriation, embezzlement, intentional fraud or similar conduct involving IS; (b) the conviction or the plea of *nolo contendere,* guilty or the equivalent with respect to a felony charge involving moral turpitude; (c) any intentional damage of a material nature to any property of IS; (d) conduct by Executive which constitutes gross misconduct or gross negligence in serving in his capacity as an employee of IS; (e) any material failure by Executive to follow the lawful written Board actions which had been communicated to Executive or to perform his job responsibilities and duties to the Company; or (f) any material breach by Executive of any material obligation under this Agreement or fiduciary duties to the Company (provided, however, that IS shall provide Executive written notice of such breach of this Agreement or failure to follow lawful written Board Action, and Executive shall have a reasonable period of time not to exceed 30 days to cure such failure or breach of this Agreement).

(c)     *Termination Upon Disability*.   In the event Executive suffers a disability that renders Executive unable to perform the essential functions of his position, even with reasonable accommodation, for more than 180 days, whether or not consecutive, within any twelve (12) month period ("Disability"), and Executive's employment is terminated by the Company or Executive as a result, Executive shall be entitled to receive (i) any Base Salary, unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date, (ii) Executive's then existing Base Salary for a period of three (3) years following termination of employment to be paid annually

in advance  with payment of the first installment made within 10 days following termination of employment and future payments on each anniversary of termination, (iii) the continuation of company paid medical, dental, disability and life insurance benefits provided under the Plans for a period of five (5) years in the form of Company paid premiums allocable to such coverage on a monthly basis, with additional monthly cash payments to Executive to the extent the coverage is taxable to Executive in an amount sufficient to cover any taxes on the premiums and such additional cash payments, provided, however, that in the event that under the terms of the Plans the Executive cannot continue to participate during such five-year term, the Company will coordinate in good faith with the Executive to provide through COBRA or replacement coverage at the companies cost and (iv) a bonus in an amount equal to three (3) times the actual bonus paid in the year prior to the termination of employment; provided however, that such bonus shall be paid annually in advance for each of the three (3) years following the termination of employment.

(d)      *Termination Upon Death*.   In the event of the death of the Executive during his employment with the Company under this Agreement, the Executive's estate shall be entitled to receive (i) any Base Salary, unpaid expense reimbursements and accrued benefits under the Plans through the Termination Date, (ii) Executive's then existing Base Salary for a period of three (3) years following termination of employment to be paid annually in advance   with payment of the first installment made within 10 days following termination of employment and future payments on each anniversary of termination, (iii) the continuation of company paid medical, dental and disability benefits provided under the Plans for Executive's beneficiaries covered at the time of the death of Executive for a period of five (5) years in the form of Company paid premiums allocable to such coverage on a monthly basis, with additional monthly cash payments to Executive's beneficiaries to the extent the coverage is taxable to such beneficiaries in an amount sufficient to cover any taxes on the premiums and such additional cash payments, provided, however, that in the event that under the terms of the Plans Executive's beneficiaries cannot continue to participate during such five-year term, the Company will coordinate in good faith with the beneficiaries to provide through COBRA or replacement coverage at the companies cost, and (iv) a bonus in an amount equal to three (3) times

7

the actual bonus paid in the year prior to the termination of employment, provided however, that such bonus shall be paid annually in advance for each of the three years following the termination of employment.

(e)     *Executive Voluntary Termination*.   In addition to the termination provisions set forth above, Executive may otherwise terminate his employment with IS at any time, provided he has given IS 30 days prior written notice of such termination.

4.     Executive's Representations and Warranties.

(a)     Executive represents and warrants that Executive is not a party to any other employment agreement, noncompetition agreement or other agreement which restriction could interfere with Executive's employment with the Company or Executive's or the Company's rights and obligations hereunder and that Executive's continued employment with the Company and the performance of Executive's duties hereunder will not breach the provisions of any contract, agreement or understanding to which Executive is party or any duty owed by Executive to any other person.   The Company acknowledges that Executive currently serves, or has served, on the Boards of Directors listed on **Schedule 1(a)**.

5.     Miscellaneous.

(a)     *Successors and Assigns*.   The provisions hereof shall be binding upon and inure to the benefit of the Company's successors and assigns.

(b)     *Entire Agreement Amendments*.   This Agreement, the Vesting Agreement dated as of April 25, 2005, between Executive and the Company, as amended from time to time, the Noncompetition and Nonsolicitation Agreement dated as of November 2, 2004, between the Executive and the Company, as amended from time to time, and the agreements between the Executive and the Company with respect to the equity or rights to equity held by Executive in the Company (pursuant to the LLC Agreement, the Company's incentive plans, or otherwise) constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof and supersedes in their entirety all other or prior agreements, whether oral or written, with respect thereto.   The respective rights and obligations of the Company and Executive

8

may be waived (either generally or in a particular instance, either retroactively or prospectively, and either for a specified period of time or indefinitely) or amended only with the written consent of a duly authorized representative of the Company and by the Executive.

(c)    *Notices*.    All demands, notices, requests, consents and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered or sent by electronic mail (with a confirmation copy sent by one of the other methods authorized in this Section), reputable commercial overnight delivery service (including Federal Express and U.S. Postal Service overnight delivery service) or deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, as set forth below:

If to the Company, addressed to:

Integrated Solutions LLC and Presidio, Inc.
7601 Ora Glen Drive
Greenbelt, MD 20770
email: Pfletcher@presidio.com
Attention: Chief Financial Officer

If to Executive:

Joel A. Schleicher
505 S. Orange Ave., Unit 901
Sarasota, FL 34236
Email: joel@presidio.com

Notices shall be deemed given upon the earlier to occur of (i) receipt by the party to whom such notice is directed; (ii) if sent by electronic mail, on the day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) after which such notice is sent; (iii) on the first business day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) following the day the same is deposited with the commercial courier if sent by commercial overnight delivery service; or (iv) the fifth day (other than a Saturday, Sunday or legal holiday in the jurisdiction to which such notice is directed) following deposit thereof with the U.S. Postal Service as aforesaid.   Each party, by notice duly given in accordance therewith may specify a different address for the giving of any notice hereunder.

(d)    _Governing Law_.    This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of New Jersey (without giving effect to any conflicts or choice of laws provisions thereof that would cause the application of the domestic substantive laws of any other jurisdiction).

(e)    _Consent to Jurisdiction._

(i)    **EACH OF THE PARTIES HERETO HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS,, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT.**

(ii)    **EACH PARTY HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT IT SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS SECTION 5(E) OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF.**

(iii)    **EACH OF THE PARTIES HERETO HEREBY EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS.  IN ADDITION, EACH OF THE PARTIES CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH SECTION 5(C) OF THIS AGREEMENT.**

(f)    _Equitable Remedies_.    The parties hereto agree that irreparable harm would occur in the event that any of the agreements and provisions this Agreement were not performed fully by the parties hereto in accordance with their specific terms or conditions or were otherwise breached, and that money damages are an inadequate remedy for breach of this Agreement because of the difficulty of ascertaining and quantifying the amount of damage that will be suffered

by the parties hereto in the event that this Agreement is not performed in accordance with its terms or conditions or is otherwise breached.   It is accordingly hereby agreed that the parties hereto shall be entitled to an injunction or injunctions to restrain, enjoin and prevent breaches of this Agreement by the other party hereto and to enforce specifically such terms and provisions of this Agreement, such remedy being in addition to and not in lieu of, any other rights and remedies to which the other party is entitled to at law or in equity.

(g)     *Waiver of Jury Trial*.   **EACH OF THE PARTIES HERETO HEREBY VOLUNTARILY AND IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT, ANY OF THE RELATED AGREEMENTS, DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.**

(h)     *Counsel for Executive.* The Company agrees to pay or reimburse Executive, on a current and timely basis, for the reasonable legal fees and other expenses incurred by Executive for counsel of Executive's own choosing (including without limitation in representing Executive in connection with any litigation pursued by either Executive or the Company) in connection with Executive's efforts to obtain and retain the benefits of the terms of this Agreement or related agreements, should any dispute arise hereunder.

(i)     *Severability; Titles and Subtitles; Gender; Singular and Plural; Counterparts; Facsimile.*

(i)     In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

(ii)     The titles of the sections and subsections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

(iii)     The use of any gender in this Agreement shall be deemed to include the other genders, and the use of the singular in this Agreement shall be deemed to include the plural (and vice versa), wherever appropriate.

11

\\\NORTHVA - 037486/000001 - 480557 v2

       (iv)     This Agreement may be executed by the parties in separate counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

       (v)     Counterparts of this Agreement (or applicable signature pages hereof) that are manually signed and delivered by electronic transmission shall be deemed to constitute signed original counterparts hereof and shall bind the parties signing and delivering in such manner.

**[Remainder of page intentionally blank, signature page follows]**

\\\NORTHVA - 037486/000001 - 480557 v2

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date and year first written above.

INTEGRATED SOLUTIONS LLC          EXECUTIVE:

By: _____     _____
John Siegel for the Board          Joel A. Schleicher

\\NORTHVA - 037486/00001 - 480567 v2

## Schedule 1(a)

Executive serves on the Board of Directors of the following Boards:

Techtronic Industries, Inc. (HK:669)(US:TTNDY)

Novatel Inc. (Nasdaq: NGPS)

Interpath Communications, Inc. dba as Usintemetworking

Fusion International Telecommunications, Inc.

Carlson School of Management at the University of MN - Board of Advisors

EXHIBIT B

February 21, 2011

Mr. Joel A. Schleicher
Chief Executive Officer
Integrated Solutions, LLC
7601 Ora Glen Drive, Suite 100
Greenbelt, MD  20770

**Re:      Clarification as to Termination upon Fundamental Changes**

Dear Joel:

Reference is hereby made to the Third Amended and Restated Employment Agreement (the "Employment Agreement") entered into by and between Joel A. Schleicher (the "Executive") and Integrated Solutions LLC, a Delaware corporation, and its subsidiaries including Presidio, Inc. and affiliates, including any principal operating subsidiary of Presidio, Inc. (collectively "IS" or the "Company") and to the Agreement and Plan of Merger by and among Presidio Holdings Inc., a Delaware corporation ("Parent"), IS, Presidio Merger Sub LLC, a Delaware limited liability company and indirect wholly-owned subsidiary of Parent, the Members' Representative (as defined therein) and, solely for the purposes of Sections 9.1, 10.3 and 10.4 therein, the Majority Investor Members (as defined therein) (the "Merger Agreement"). Defined terms used in this letter agreement shall have the respective meanings given them in the Employment Agreement and Merger Agreement, unless otherwise defined herein.

This letter agreement will memorialize our understanding that upon the Closing of the Merger Agreement, the provisions of the Employment Agreement with respect to "Termination upon a Fundamental Change" as defined in Section 3(a)(ii) thereof shall be interpreted to include (x) any circumstance in which, prior to the Initial Public Offering, Executive is not elected or appointed the Chairman of the Board of Parent, and (y) any circumstance in which another Person other than Executive is appointed or acts as Chief Executive Officer of Parent, it being understood that a non-operational officer of Parent may be elected or appointed for administrative purposes and that such election or appointment shall not constitute a Fundamental Change provided such officer does not perform the responsibilities of Chief Executive Officer or serve such functions as would otherwise constitute a Fundamental Change with respect to Executive under the Employment Agreement, and it being further understood that the cure period referenced in Section 3(a)(ii) of the Employment Agreement shall apply in the case that clause (x) or (y) of this sentence becomes applicable. Notwithstanding the foregoing or anything else to the contrary contained in this letter agreement, (i) in the event that Executive is terminated by the Company for Cause or the Executive

voluntarily terminates his employment with the Company other than within sixty days following a Fundamental Change, Section 3(a) of the Employment Agreement shall govern such termination without giving effects to this paragraph, and (ii) following the completion of a Public Offering (as such term is defined in that certain Stockholders' Agreement by and among Parent and its stockholders (the "Stockholders' Agreement")), in the event the Executive is made Chairman of the Board of Parent but not Chief Executive Officer of Parent because applicable listing standards or law require the roles of Chairman of the Board and Chief Executive Officer to be separated, such fact or circumstance shall not constitute a Fundamental Change.

It is further agreed and understood that as long as the Executive is Chief Executive Officer and/or Chairman of the Board of the Company, in the event AS (as defined in the Stockholders' Agreement) elects to exercise Parent's Call Option (as defined in the Stockholders' Agreement) pursuant to Section 4.1(a)(ii) of the Stockholders' Agreement, AS shall permit the Executive to participate in any such purchase by Parent on a pro rata basis based upon the aggregate number of shares of the Company held by AS and the Executive, at the same price per share and upon the same terms and conditions (including, without limitation, time of payment and form of consideration) as to be paid by and given to AS.

It is further agreed and understood that Section 5.3 of the Stockholders' Agreement shall not apply to the Executive.

Except as modified by this letter agreement, the provisions of the Employment Agreement are hereby ratified and confirmed; provided that Section 5(b) of the Employment Agreement shall be deemed to include this letter agreement and the Non-Competition and Non-Solicitation Agreement that the Executive is entering into in connection with the Merger Agreement; provided further that the reference to the Investor Members in Section 2(b) of the Employment Agreement shall be deemed to be replaced by a reference to American Securities LLC.

This letter agreement shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, except with respect to the choice-of-law provisions thereof. Wherever possible each provision of this letter agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this letter agreement shall be prohibited or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this letter agreement. This letter agreement may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same agreement. This letter agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns. There are no unwritten oral agreements between the parties. The effectiveness of this letter agreement shall be conditioned upon the consummation of the Merger. If the Merger is not consummated or the Merger Agreement is terminated, then this Agreement shall be deemed void *ab initio*.

*[Signature page follows]*

       If you are in agreement with the foregoing, please execute and deliver a copy of this letter agreement to the undersigned.

INTEGRATED SOLUTIONS LLC, a Delaware limited liability company

By: _____

Name:  Paul Fletcher

Title:   Chief Financial Officer

[SIGNATURE PAGE TO SCHLEICHER EMPLOYMENT AGREEMENT AMENDMENT]

PRESIDIO HOLDINGS INC., a Delaware
corporation

By:_____

Name: Eric Schondorf
Title: Vice President & Secretary

Agreed to, as of the ___ day of February, 2011

_____
Joel A. Schleicher

EXHIBIT C

**WRITTEN CONSENT
OF
THE SOLE STOCKHOLDER
OF
PRESIDIO, INC.**

The undersigned, being the sole stockholder (the "Stockholder") of Presidio, Inc., a Georgia corporation (the "Corporation"), does hereby consent, pursuant to the provisions of Section 14-2-704 of the Georgia Business Corporation Code (the "GBCC"), to the adoption of the following resolutions in lieu of a meeting and authorizes the taking of all actions contemplated hereby:

1.    <u>Amendment of Bylaws – Vacancies in the Board</u>

WHEREAS, Section 11.1 of the Amended and Restated Bylaws of the Corporation (the "Bylaws") provides that the shareholders of the Corporation have the power to alter, amend or repeal any bylaws, and adopt new bylaws, and provides further that any Bylaws adopted by the shareholders shall not be altered, amended or repealed by the board of directors of the Corporation (the "Board");

WHEREAS, Section 3.4 of the Bylaws provides that a vacancy occurring in the Board, except by reason of removal of a director, may be filled for the unexpired term, and until the shareholders shall have elected a successor, by affirmative vote of a majority of the directors remaining in office though less than a quorum of the Board; and

WHEREAS, the Stockholder has deemed it advisable and in the best interests of the Corporation to amend the Bylaws to permit the shareholders of the Corporation to fill any vacancies occurring in the Board;

NOW, THEREFORE, BE IT RESOLVED, that Section 3.4 of the Bylaws be and hereby is amended and restated in its entirety to read as follows:

"3.4    <u>Vacancies</u>.   A vacancy occurring in the Board of Directors may be filled for the unexpired term by the affirmative vote of a majority of the shares entitled to vote at an election of directors."

2.    <u>Amendment of Bylaws – Notice</u>

WHEREAS, Section 4.4 of the Bylaws provides that notice of each special meeting shall be given by mailing a notice of the meeting at least five days before the date of the meeting, or by telephone, telegram, cablegram or personal delivery at least three days before the date of the meeting; and

WHEREAS, the Stockholder has deemed it advisable and in the best interests of the Corporation to amend the Bylaws to permit notice of each special meeting to be given by electronic mail at least three days before the date of the meeting;

NOW, THEREFORE, BE IT RESOLVED, that Section 4.4 of the Bylaws be and hereby is amended and restated in its entirety to read as follows:

"4.4     Notice of Meetings.   No notice shall be required for any regularly scheduled meeting of the directors of the corporation.  Unless waived as contemplated in Section 5.2, the President or Secretary of the corporation or any director thereof shall give notice to each director of each special meeting stating the time, place and purposes of the meeting.  Such notice shall be given by mailing a notice of the meeting at least five days before the date of the meeting, or by telephone, telegram, cablegram, electronic mail or personal delivery at least three days before the date of the meeting.  Notice shall be deemed to have been given by telegram or cablegram at the time notice is filed with the transmitting agency.  Notice shall be deemed to have been given by electronic mail at the time notice is sent.  Attendance by a director at a meeting shall constitute waiver of notice of such meeting, except where a director attends a meeting for the express purpose of objecting to the transaction of business because the meeting is not lawfully called."

3.     Increase in the Size of the Board and Appointment and Ratification of Directors

WHEREAS, Section 3.2 of the Bylaws provides that the precise number of the directors on the Board shall be fixed by resolution of the shareholders from time to time;

WHEREAS, Joel A. Schleicher and Paul Fletcher were previously elected to the Board;

WHEREAS, the Stockholder has deemed it advisable and in the best interests of the Corporation to increase the number of directors serving on the Board and to fill the vacancies on the Board created by such increase;

WHEREAS, the Stockholder has deemed it advisable and in the best interests of the Corporation to nominate and elect the following persons as directors of the Corporation to hold office until their respective successors are duly elected and qualified or until their earlier death, resignation, removal or disqualification:

Kevin Penn<br>Paul Rossetti<br>Aaron Tolson

NOW, THEREFORE, BE IT RESOLVED, that the number of directors constituting the Board shall be fixed at five (5); and further

RESOLVED, that, in addition to Joel A. Schleicher and Paul Fletcher who were previously elected to the Board, Kevin Penn, Paul Rossetti and Aaron Tolson are hereby elected as directors of the Corporation, to hold office until their respective successors are duly elected and qualified or until their earlier death, resignation, removal or disqualification; and further

4.     General Authorization

RESOLVED, that the President, any Vice President, the Treasurer or Secretary (each, a "Proper Officer," and collectively the "Proper Officers") of the Corporation, any one of whom may act without joinder of any of the others, be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of the Corporation, to take such additional action and to execute and deliver such additional agreements, documents and instruments as any of them may deem necessary or appropriate to implement the provisions of the foregoing resolutions, the authority for the taking of such action and the execution and delivery of such agreements, documents and instruments to be conclusively evidenced thereby; and further

5.      Ratification of Past Actions

RESOLVED, that all actions of any Proper Officer, taken on behalf of the Corporation, prior to the date hereof that would have been authorized by these resolutions but for the fact that such actions were taken prior to the date hereof, be, and hereby are, approved, adopted, ratified, and confirmed in all respects as the actions of the Corporation.

*[The remainder of the page is intentionally left blank.]*

IN WITNESS WHEREOF, the undersigned, being the sole stockholder of the Corporation, has executed this written consent and made it to be effective as of this 28th day of May, 2011.

PRESIDIO IS CORP.


By: _____/s/ Eric Schondorf_____

Name:  Eric Schondorf
Title:   Vice President & Secretary

EXHIBIT D

**Presidio, Inc.**
**7601 Ora Glen Drive**
**Greenbelt, MD 20770**

June 6, 2011

*Via electronic mail and Federal Express*
Joel A. Schleicher
505 S. Orange Avenue, Unit 901
Sarasota, Florida 34236
Joel@Presidio.com

Joel:

Reference is made to the Third Amended and Restated Employment Agreement by and between you, and Integrated Solutions LLC, a Delaware corporation (now known as Presidio, Inc.) and its subsidiaries and affiliates (collectively, the "Company"), dated as of September 1, 2010 (as amended by that certain letter agreement by and between you and the Company, dated as of February 21, 2011, the "Employment Agreement"). This letter is to provide you with notice in conformity with Section 5(c) of the Employment Agreement, of the termination of your employment pursuant to Section 3(a)(i) of the Employment Agreement. In accordance with Section 3 of the Employment Agreement, the Termination Date will be June 16, 2011 (ten (10) days following the date notice is given).

Until such time, you will be deemed to be on leave and should not perform any duties or report to the office. During this period prior to the Termination Date, you are not authorized to take any actions on behalf of the Company or any of its affiliates. A representative of the Company will contact you concerning the return of all card keys, company credit cards and other company property. You shall continue to be bound by the non-compete, non-solicit, confidentiality obligations, non-disparagement and other similar obligations to which you are currently bound, including, without limitation, those contained in the Release, the Noncompetition and Nonsolicitation Agreement between the Company and the Executive, dated as of November 2, 2004, and the Non-Competition, Non-Solicitation and No-Hire Agreement, by and among Presidio Holdings Inc., Presidio Inc., and the Executive, dated as of February 22, 2011, which are each incorporated herein by reference and remain in full force and effect in accordance with their terms.

PRESIDIO, INC.

By: _____

Name:  Eric Schondorf
Title:    Vice President & Secretary